UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

---------------------------------------------------------- x
RICHARD MEDOFF, Individually and On :
Behalf Of All Others Similarly Situated, :
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　　　: Civil Action No. 1:09-cv-00554-S-DLM
　　vs. :
　　　　　　　　　　　　　　　　　　　　　　:
CVS CAREMARK CORPORATION, THOMAS :
M. RYAN, DAVID RICKARD, and HOWARD :
McLURE, :
　　　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　Defendants. :
---------------------------------------------------------- x

MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION TO DISMISS

　　　　　　　　　　　　　　　　　HINCKLEY, ALLEN & SNYDER LLP
　　　　　　　　　　　　　　　　　50 Kennedy Plaza, Suite 1500
　　　　　　　　　　　　　　　　　Providence, Rhode Island 02903
　　　　　　　　　　　　　　　　　Telephone: (401) 274-2000
　　　　　　　　　　　　　　　　　Facsimile:　(401) 277-9600

　　　　　　　　　　　　　　　　　DAVIS POLK & WARDWELL LLP
　　　　　　　　　　　　　　　　　450 Lexington Avenue
　　　　　　　　　　　　　　　　　New York, New York 10017
　　　　　　　　　　　　　　　　　Telephone: (212) 450-4000
　　　　　　　　　　　　　　　　　Facsimile:　(212) 701-5800

　　　　　　　　　　　　　　　　　*Attorneys for Defendants*

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 3

I.  PLAINTIFFS' CLAIMS MUST BE DISMISSED IN THEIR ENTIRETY UNDER THE PSLRA'S SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS AND FOR FAILURE TO PLEAD LOSS CAUSATION SUFFICIENTLY ...................................... 3

II. MATRIXX AND ANIMA CONFIRM THAT THE COMPANY HAD NO DUTY TO DISCLOSE CONTRACT LOSSES UNLESS THEY WERE SUBSTANTIALLY CERTAIN TO OCCUR ........................................................................................................ 3

III. THE SUPREME COURT'S ANALYSIS IN MATRIXX ONLY CONFIRMS THAT PLAINTIFFS HAVE FAILED TO PLEAD SCIENTER SUFFICIENTLY .............................. 7

CONCLUSION ............................................................................................................................... 11

## TABLE OF AUTHORITIES

PAGE

**Cases**

Hill v. Gozani, No. 10-1048, 2011 WL 924242 (1st Cir. Mar. 18, 2011) .................................... passim

City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp.,
 632 F.3d 751 (1st Cir. 2011) ........................................................................................... 8, 9, 10

Cooperman v. Individual, Inc., 171 F.3d 43 (1st Cir. 1999) ............................................................ 4

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005) ........................................................................ 2

Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309 (2011) ............................................. passim

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ............................................ 3, 8

**Statutes and Rules**

17 C.F.R. § 240.10b-5(b) ................................................................................................................ 4

Defendants submit this supplemental memorandum of law as directed by this Court's March 22, 2011 order in further support of their motion to dismiss plaintiffs' Complaint.[1] In the March 22 order, this Court requested supplemental briefing on the impact on the motion of two recent decisions: Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309 (2011), and Hill v. Gozani, No. 10-1048, 2011 WL 924242 (1st Cir. Mar. 18, 2011) (hereinafter Anima). As explained below, both cases provide additional support for dismissal of plaintiffs' claims.[2]

## PRELIMINARY STATEMENT

As set forth in Defendants' original motion papers and reply, there are numerous independent grounds that require dismissal of the Complaint in its entirety.

*First*, the PSLRA's statutory safe harbor for forward-looking statements protects Mr. Ryan's Preliminary Earnings Prediction for two reasons. (See Defs.' Mem. Part I; Reply Part I.) The Preliminary Earnings Prediction was accompanied by meaningful cautionary language and, under the PSLRA and well-established First Circuit law, is protected for that reason alone. (Defs.' Mem. Section I.A; Reply Section I.B.) In addition, plaintiffs do not plead facts sufficient to allege that Mr. Ryan had actual knowledge that the Preliminary Earnings Prediction was false or misleading when made, as required to overcome the PSLRA's safe harbor. (Defs.' Mem. Section I.B; Reply Section I.C.) Neither Matrixx nor Anima addresses or diminishes this well-established law, which requires dismissal of all of plaintiffs' claims relating to the Preliminary Earnings Prediction.

*Second*, plaintiffs have not pled loss causation for the remainder of the alleged misstatements and omissions in the Complaint because plaintiffs do not and cannot contend that any of these

---

[1] For the purposes of this supplemental memorandum of law, all defined terms shall have the same meaning as those in Defendants' opening memorandum of law and reply memorandum of law in support of their motion to dismiss.

[2] As reflected in this Court's March 22, 2011 order, Defendants' "motion to dismiss will be automatically reinstated (i.e., it need not be refiled)" once plaintiffs have filed their response to this supplemental memorandum on or before May 13, 2011.

statements was addressed, much less "corrected," on the November Call. (See Defs.' Mem. Section II.A; Reply Section II.A.) Each of the contract losses that underlie plaintiffs' allegations had already been disclosed by the Company or was known publicly from news articles, analyst reports or third-party press releases well before the November Call. For that reason, disclosure of those losses cannot, as a matter of law, have caused the loss for which plaintiffs now seek to recover. (See Defs.' Mem. Section II.A; Reply Section II.A.) Anima does quote the bedrock principle that undergirds this independent basis for dismissal: that the securities laws exist "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations *actually cause*." No. 10-1048, 2011 WL 924242, at *9 (1st Cir. Mar. 18, 2011) (quoting Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 345 (2005)) (emphasis added). But neither Anima nor Matrixx otherwise addresses loss causation. Neither therefore diminishes in any way this independent ground for dismissal of all aspects of the Complaint other than the Preliminary Earnings Prediction, which is an inactionable forward-looking statement for the reasons explained above.

*Third*, the vast majority of the statements are inactionable for the separate, independent reasons that (1) the company need not disclose a risk that is merely likely, as opposed to substantially certain, to occur, and (2) because many of the statements are inactionable corporate puffery. (See Defs.' Mem. Section II.B; Reply Section II.B.) As explained below, both Matrixx and Anima provide further guidance on the former of these grounds, strongly supporting this alternative basis for dismissal of plaintiffs' claims that would require disclosure of potential contract losses before those losses were "substantially certain" to occur. Anima in particular confirms that robust public disclosures about the general possibility of contract losses like those made by the Company here amply satisfy its disclosure obligations.

*Fourth*, all of plaintiffs' claims must fail for the further independent reason that plaintiffs have not pled facts sufficient to support a strong inference of scienter. (See Defs.' Mem. Part III; Reply Part III.) As explained further below, the Supreme Court's analysis in Matrixx only provides

2

additional support for this conclusion. In Matrixx, the Court applied the analysis first set forth in Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007), which requires dismissal unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Matrixx, 131 S. Ct. at 1324 (quoting Tellabs, 551 U.S. at 324). In stark contrast to the allegations that were upheld in Matrixx, plaintiffs' allegations of scienter here—based on insider sales and non-specific and irrelevant assertions by anonymous witnesses who concededly had no contact with senior executives—do not satisfy this high pleading burden.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS MUST BE DISMISSED IN THEIR ENTIRETY UNDER THE PSLRA'S SAFE HARBOR FOR FORWARD-LOOKING STATEMENTS AND FOR FAILURE TO PLEAD LOSS CAUSATION SUFFICIENTLY

As set forth in detail in Defendants' opening and reply briefs, plaintiffs' Complaint must be dismissed in its entirety because their claims either (i) are barred by the PSLRA's safe harbor for forward-looking statements or (ii) fail to plead loss causation. Because neither Matrixx nor Anima addresses these grounds for dismissal, Defendants do not address them further here and respectfully refer the Court to their opening and reply briefs. (See Defs.' Mem. Part I, Section II.A; Reply Part I, Section II.A.)

### II. MATRIXX AND ANIMA CONFIRM THAT THE COMPANY HAD NO DUTY TO DISCLOSE CONTRACT LOSSES UNLESS THEY WERE SUBSTANTIALLY CERTAIN TO OCCUR

Both Matrixx and Anima further support dismissal of plaintiffs' claims that the Company should have disclosed contracts it was allegedly "likely" to lose.[3] As explained in Defendants' opening and reply briefs, it has long been clear that there is no duty to disclose an outcome that is

---

[3] In addition, many of the alleged misstatements in plaintiffs' Complaint are inactionable puffery and should be dismissed on that ground alone. Because neither Matrixx nor Anima addresses that ground for dismissal, Defendants do not address it further here and respectfully refer the Court to their opening and reply briefs. (See Defs.' Mem. Section II.B.2; Reply Section II.B.2.)

merely likely, as opposed to one that is substantially certain to occur. (See Defs.' Mem. at 28-29 and cases cited.) For that reason, CVS Caremark had no duty to disclose the risk of specific potential contract losses, particularly where CVS Caremark had already disclosed the general risk of contract losses in its public filings. Both Anima and Matrixx confirm this basic proposition of federal securities law.

As a threshold matter, the Supreme Court explained in Matrixx that "it bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." 131 S. Ct. at 1321. Or, as the First Circuit likewise clarified in Anima, "the mere possession of material, nonpublic information does not create a duty to disclose." Anima, 2011 WL 924242 at *12 (quoting Cooperman v. Individual, Inc., 171 F.3d 43, 49 (1st Cir. 1999)). Rather, "[d]isclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" Matrixx, 131 S. Ct. at 1321 (quoting 17 C.F.R. § 240.10b-5(b)).

Therefore, even if plaintiffs could plead facts sufficient to establish that the loss of *any* of the contracts was material—which they have not—CVS Caremark was under no obligation to disclose that the losses of any of these contracts were merely "likely" in view of its other public disclosures. Specifically, CVS Caremark had already disclosed to the market: "our failure to renew or win PBM business could adversely affect our business, financial position and results of operation." (Declaration of Lawrence Portnoy, dated July 2, 2010, Ex. 1, 2008 10-K at 20.) Under those circumstances, there was no need to disclose anything further about the risk of loss of any particular contract.

The First Circuit's analysis in Anima directly supports this conclusion, deeming far more material alleged omissions inactionable. In Anima, plaintiffs alleged that defendants promoted improper billing practices that resulted in artificially high reimbursement rates from insurers for a new device the company had developed. 2011 WL 924242 at *1 (1st Cir. March 18,

2011). Plaintiffs claimed that the company failed adequately to disclose the risk that insurers would not fully reimburse for procedures using the device, and that, to the extent defendants did discuss insurer reimbursements, such discussions were affirmative misstatements. Id. Specifically, plaintiffs alleged that the defendant company was aware of, yet disregarded, the opinions of two successive, internal experts regarding the significant risks of non-reimbursement, including one expert's warning that recommending the use of these improper practices would amount to Medicare fraud. Id. at *3, *12. Both experts allegedly resigned after the company refused to heed their warnings. Id. at *3.

The First Circuit rejected as inactionable plaintiffs' claims that the company should have disclosed more about the risk of nonreimbursement. Id. at *15. Specifically, the Court of Appeals made clear that a company need not disclose particular events or losses in the absence of "certainty" or "near certainty," even if the occurrence of those events or losses could be considered material. Id. at *14. Moreover, the court explained that "where the level of risk is unknown," the failure to specify the precise degree of the risk is not an actionable omission. Id. at *15 (noting that a general statement of risk "does not create liability simply because it does not disclose, at the level of detail the plaintiffs request in retrospect, all of the factors that contribute to the risk assessment").

The Supreme Court's analysis in Matrixx—which addressed a starkly different factual situation from that alleged in the Complaint—is likewise instructive. There, a pharmaceutical company failed to disclose reports that its leading product—Zicam Cold Remedy—caused a loss of the sense of smell, medically known as anosmia. 131 S. Ct. at 1314-15. Matrixx urged the Court to adopt a bright-line test for determining whether plaintiffs had sufficiently pled that the company had made material misstatements and omissions—namely, that, absent an allegation that there was a statistically significant risk that its product caused the adverse events, the lack of disclosure was not materially misleading. Id. at 1313-14. The Supreme Court declined to adopt such a rule, instead affirming the continued application of the materiality standard set forth in Basic Inc. v. Levinson— calling for an assessment of whether a reasonable investor would have viewed the undisclosed

5

information as having significantly altered the total mix of information made available. Id. at 1321. The Court clarified that the mere existence of reports of adverse events, without more, would not satisfy the Basic "total mix" standard. Id. But the particular facts in Matrixx, combined with the existence of adverse events, required disclosure in that case.

In contrast to CVS Caremark, which openly disclosed the risk of contract losses, Matrixx had affirmatively denied any possible link between Zicam and anosmia, even though it was aware of the adverse event reports and the evidence of a biological link between Zicam and anosmia. Specifically, Matrixx's vice president for research and development had personally spoken to doctors who had raised concerns about Zicam's connection with anosmia and cited studies supporting this connection. Id. at 1314-15. That same vice president wrote a letter to one of those doctors barring him from using Matrixx's name or the name of any of its products in a presentation that doctor made regarding Zicam's connection to anosmia. Id. at 1315. Furthermore, product liability suits were filed against the company and the FDA had launched an investigation in reaction to these suits. Id. Despite all of this knowledge, the company did *not* disclose *any* risk that a possible connection to anosmia could impact its financial results. Id. Instead, Matrixx issued a press release disclaiming any connection between Zicam and anosmia and representing that no study had produced a single report of lost or diminished sense of smell. Id. at 1316. In view of those statements and in the absence of any disclosure of the risk of loss, the Court concluded that Matrixx's failure to disclose the adverse events at issue created a reasonable expectation that discovery would lead to evidence satisfying the materiality requirement. Id. at 1323.

The differences between the circumstances in Matrixx and those alleged here could not be more clear. Far from denying the possibility that future contract losses could impact its results, CVS Caremark expressly explained that there was a risk the company would not be able to win new business on terms as favorable as it had in the past, and such a failure to renew or win PBM business could have an adverse effect on the Company. Moreover, the actionable omission in Matrixx was of

6

adverse events that had *actually* transpired—not the mere possibility of adverse events. By contrast, plaintiffs' allegations here pertain only to *potential* future losses. For these reasons, Matrixx is fully consistent with Anima and the host of cases that preceded it (cited in Defendants' opening and reply briefs) that make clear that CVS Caremark had no legal obligation to disclose specific potential contract losses where the general risk of contract losses had already been disclosed.

In any case, the question of whether or not there was a duty to disclose a specific contract loss or the risk of that loss is not dispositive. Because each of the contract losses alleged in the Complaint had been publicly disclosed well in advance of the November Call—the only alleged corrective disclosure event—plaintiffs have failed to allege loss causation for any of these alleged omissions.[4] For that reason, even if the alleged omissions were actionable—which they are not—they would not entitle plaintiffs to relief here.

### III. THE SUPREME COURT'S ANALYSIS IN MATRIXX ONLY CONFIRMS THAT PLAINTIFFS HAVE FAILED TO PLEAD SCIENTER SUFFICIENTLY

The Complaint's circumstantial allegations—including the statements attributed to confidential witnesses—fail to raise the strong inference of scienter necessary to support a claim for securities fraud. (Defs.' Mem. Part III; Reply Part III.) The Supreme Court's decision in Matrixx further supports this independent ground for dismissal.

Matrixx confirmed and applied the Supreme Court's now well-established approach to analyzing allegations of scienter under the PSLRA's heightened pleading standard. Quoting from its earlier Tellabs decision, the Court explained: "This standard requires courts to take into account

---

[4] As explained in Defendants' opening and reply briefs, each of the contract losses described in the Complaint had been disclosed publicly well before the November Call. (Defs.' Mem. Section II.A; Reply Section II.A.) Though plaintiffs seek to make much of the fact that the Company itself (consistent with its general policy not to disclose individual PBM contract losses mid-quarter) had not itself disclosed the loss of the New Jersey contract (Pls. Opp. at 10), plaintiffs have failed to allege and, indeed, could not allege that the loss of the New Jersey contract was made public for the first time on the November Call. (Defs.' Mem. at 24; Reply at 13 n.9) Months earlier, CVS Caremark's loss of the contract was publicized in news articles—as well as a host of analysts reports—many specifically noting that the loss would not have any material impact on projected earnings.

'plausible opposing inferences.' A complaint adequately pleads scienter under the PSLRA 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" Matrixx, 131 S. Ct. at 1324 (quoting Tellabs, 551 U.S. at 323, 324) (internal citation omitted). Viewing the allegations in Matrixx "holistically," the Court concluded that plaintiffs there had met this steep pleading burden. Id. at 1324-25.[5]

In Matrixx, the Supreme Court identified a variety of factors supporting the inference that Matrixx acted with the requisite level of scienter in electing not to disclose reports of adverse events. These factors included, among other things: (1) representing that the company was hiring a consultant to review the product, (2) actively preventing a doctor from using the company's or its product's names in a presentation regarding the connection between Zicam and anosmia, and (3) issuing a press release denying the existence of adverse studies. Matrixx, 131 S. Ct. at 1314-16. By contrast, plaintiffs here have not made a single allegation that Defendants acted recklessly by not disclosing specific *potential* contract losses.[6] In fact, Defendants have pointed to numerous

---

[5] In doing so, the Court assumed without deciding that "recklessness suffices to fulfill the scienter requirement" for the alleged misstatements and omissions at issue in Matrixx. Id. at 1323-24. In doing so, the Matrixx court specifically noted that defendants there did *not* argue that the statements or omissions alleged were forward-looking statements for which the PSLRA requires a still heightened level of pleading of "actual knowledge." Matrixx, 131 S. Ct. at 1324 n.14. Here, in contrast, the Preliminary Earnings Prediction—the only statement that was arguably corrected on the November Call—squarely fits into the PSLRA's safe harbor for forward-looking statements. (Defs.' Mem. Part I; Reply Part I.) Therefore, the analysis in Matrixx is relevant only to portions of plaintiffs' Complaint *other than* the Preliminary Earnings Prediction. Matrixx does not bear on the analysis of whether plaintiffs have adequately pled scienter with respect to that statement, which they have not. Defendants respectfully refer the Court to their opening and reply briefs on that issue.

[6] Indeed, Matrixx involved adverse reports regarding Zicam, a product that accounted for 70% of the company's sales and was described as its "leading revenue-generating product." 131 S. Ct. at 1323. The First Circuit addressed a similar scenario, albeit in reverse, in another recent case: City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp., 632 F.3d 751 (1st Cir. 2011). In Waters, the First Circuit found, in affirming dismissal of plaintiffs' complaint, that defendants did not act with recklessness by failing to disclose a regulatory change affecting only 10% of the company's global sales. Id. at 759 (holding that, in determining whether to disclose an event that impacts sales, "management must weigh the anticipated magnitude of the event in light of the totality of the company activity"). Taken together, these holdings suggest that the relative significance of the affected business in relation to the company's overall business, is probative of whether or not defendants acted with the requisite scienter in failing to disclose the underlying negative information. Like in Waters—and unlike in Matrixx—plaintiffs here cannot allege that the failure to disclose the loss of a single contract, even if known to the Company with certainty, provides the basis for a strong inference of scienter given the insignificance of a single contract loss in relation to the enormity of CVS Caremark's overall business.

allegations in the Complaint affirmatively undercutting any inference of scienter. (See, e.g., Defs.' Mem. at 42 (Company added staffing to customer service base for New Jersey); Defs.' Reply at 29 (Company received JD Power award for excellence in customer service for third time); id. (for 2010 selling season, Company had 92% client retention rate, had gained 125 new clients and had $1.4 billion in contract wins).)

Furthermore, in Matrixx, plaintiffs alleged that a senior company official had direct conversations with the doctors making the adverse reports. No such direct knowledge by Defendants has been alleged in the present case. None of the confidential witnesses cited to in the Complaint—only about half of whom were even employed by the Company during the Class Period—is alleged to have ever met any of the Individual Defendants. Moreover, none of the confidential witnesses provides any factual allegations supporting plaintiffs' claim that any Individual Defendant was aware that contracts were being lost due to allegedly pervasive service problems. (Defs.' Mem. at 38-40.)

Finally, plaintiffs have failed to show that Defendants' trades were unusual and made in either suspicious amounts or at suspicious times. Even if Defendants' trades were suspicious, such allegations of insider trading are insufficient to establish scienter. (Defs.' Mem. at 34-38.) In this respect, another recent First Circuit case—City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Waters Corp., 632 F.3d 751 (1st Cir. 2011)—makes crystal clear that the alleged stock sales here are not probative of scienter. In Waters, the Court of Appeals upheld the dismissal of the plaintiffs' scienter claims, finding that the alleged stock sales did not "offer the requisite support for a strong inference of scienter" where one defendant had sold only 4.82% of his holdings in the class period and the other had sold approximately 29% of his holdings during the class period. Waters, 632 F.3d at 760-62. The Individual Defendants in the instant case are alleged to have likewise sold only 5.4%,

9

17% and 22% of their stock holdings, respectively, during the Class Period.[7] For those reasons, plaintiffs have failed to meet their burden on pleading scienter under the PSRLA, and the Complaint should therefore be dismissed.

---

[7] Notably—and contrary to plaintiffs' contention (Pls.' Opp. at 47 n.24)—the First Circuit in Waters unambiguously held that the proper way to calculate the percentage of a defendant's holdings sold for purposes of this analysis is to include available stock options. Waters, 632 F.3d at 760-761.

## CONCLUSION

For the reasons stated above and in Defendants' original motion to dismiss briefing, plaintiffs' Corrected Consolidated Class Action Complaint must be dismissed for failure to state a claim.

Dated:  Providence, Rhode Island
April 29, 2010

By:  /s/ William R. Grimm
William R. Grimm #1938
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island  02903
Tel.   (401) 274-2000
Fax.   (401) 277-9600
Email.  wgrimm@haslaw.com

DAVIS POLK & WARDWELL LLP
Lawrence Portnoy *(pro hac vice)*
Edmund Polubinski III *(pro hac vice)*
Jessica K. Foschi *(pro hac vice)*
450 Lexington Avenue
New York, New York  10017
Tel.   (212) 450-4000
Fax.   (212) 701-5800
Email.  Lawrence.Portnoy@davispolk.com
        Edmund.Polubinski@davispolk.com
        Jessica.Foschi@davispolk.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2011 a copy of the foregoing Memorandum of Law in Further Support of Defendants' Motion to Dismiss was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ Mitchell R. Edwards
Mitchell R. Edwards #6942
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
401-274-2000
401-277-9600 (fax)
medwards@haslaw.com
