```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF RHODE ISLAND
```

City of Brockton Retirement
System *et al.*

    v.                                  Civil No. 09-cv-554-JL
                                        Opinion No. 2013 DNH 178
CVS Caremark Corporation *et al.*


**MEMORANDUM ORDER**

This is a putative class action by disappointed shareholders of CVS Caremark Corporation, who allege that the company and certain of its officers made a number of fraudulent statements and omissions about the integration of CVS's retail pharmacy business, and Caremark's "prescription benefit manager," or "PBM," business, following the companies' merger in November 2007. The plaintiffs claim that, as a result of these misstatements and omissions, they purchased CVS Caremark stock at artificially inflated prices, only to see the share price decline by 20 percent on November 5, 2009, when (during the company's third-quarter earnings call) "investors learned the truth about the company's failure to integrate the merged-entity, which resulted in the loss of billions of dollars of PBM contracts, and that the CVS Caremark retail-PBM model had failed to gain acceptance in the marketplace." The plaintiffs seek to recover for their alleged losses under § 10(b) of the Exchange Act, 15

U.S.C. § 78j(b), and Rule 10b-5 of the Securities and Exchange Commission, 17 C.F.R. § 240.10b-5.

In May 2012, following extensive briefing and oral argument, this court granted the defendants' motion to dismiss the complaint by way of a comprehensive written order. City of Brockton Ret. Sys. v. CVS Caremark Corp., 2012 DNH 106. This court ruled that, aside from an unrealized earnings projection, which was not actionable due to the "safe harbor" for forward-looking statements, 15 U.S.C. § 77z-2(c)(1)(2), the plaintiffs had not plausibly alleged that the claimed misstatements or omissions caused their loss. Id. at 3. This court reasoned that the company's "loss of billions of dollars of PBM contracts" had been disclosed several months prior to the earnings call, which also did not "disclose" the company's alleged "failure to integrate the merged-entity" or that the "CVS Caremark retail-PBM model had failed to gain acceptance in the marketplace"--in fact, the company had specifically denied the existence of such problems during the call, and attributed the contract losses to other factors. Id. at 25-27. This court did not reach the defendants' alternative arguments for dismissal: that the plaintiffs had failed to plead any actionable misstatements or omissions and that the complaint failed to "state with particularity facts giving rise to a strong inference that the

defendant[s] acted with the required state of mind," as required by the statutory pleading standard, 15 U.S.C. § 78u-4(b)(2).

The plaintiffs appealed this court's judgment of dismissal to the Court of Appeals, challenging the ruling that they had not plausibly alleged loss causation, but not the ruling that the earnings projection was inactionable. The Court of Appeals agreed with the plaintiffs, in part. Mass. Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229 (1st Cir. 2013). First, the court observed, "the complaint does not allege that [CVS Caremark's] clients rejected the idea of a combined PBM and retail pharmacy. Therefore, the [plaintiffs] fail to state a claim regarding the business model itself." Id. at 239. But, the Court of Appeals ruled, the plaintiffs had plausibly alleged that the November 2009 earnings call "revealed to the market that CVS Caremark had problems with service and the integration of its systems," even though, again, the company had specifically denied the existence of those problems during the call. Id. at 240. While "[p]erhaps the market did not perceive every detail of CVS Caremark's struggles" as a result of the earnings call, the court explained, the market "knew enough to drive down the price of CVS Caremark shares by 20%."[1] Id. (footnote by the court omitted).

---

[1]Of course, one "detail of CVS Caremark's struggles" that the market knew as a result of the call was that the company missed its earnings forecast by a significant margin. As this

3

The defendants urged, as an alternative basis for affirmance, that the plaintiffs had not alleged any actionable misstatement or omission, but the Court of Appeals declined to address that argument. Id.  The court explained that "the parties' briefing on this issue is abbreviated, so we think it best to allow the district court to consider this argument in the first instance.  The same is true for the scienter element of the [plaintiffs'] claims, which was briefed before the district court but not on appeal." Id.  Rather than reversing this court's dismissal order, then, the Court of Appeals vacated it and remanded the case here "to allow the court to consider alternative grounds for dismissal if it chooses." Id.

---

court had reasoned, that disclosure "could plausibly have caused that day's precipitous drop in the CVS Caremark share price," but it could not support the plaintiffs' claims, since the earnings forecast was an inactionable forward-looking statement. City of Brockton, 2012 DNH 106, 17.  The Court of Appeals, however, relied on the missed forecast as lending plausibility to the plaintiffs' loss causation theory, declaring that "[t]he only systemic failure likely to produce [the disappointing earnings] numbers was a failure to integrate the PBM systems," which was the very fact that the plaintiffs accused the defendants of withholding until the call. Mass. Ret. Sys., 716 F.3d at 241. But, in a footnote, the Court of Appeals dispelled any suggestion that the disclosure of the missed earnings projection could itself sustain the plaintiffs' loss causation theory, stating, "[i]f this case proceeds, it will be up to the [plaintiffs] to prove how much of this drop resulted from revelations about CVS Caremark's integration, which are actionable, and how much resulted from disappointment in CVS Caremark's corrected earnings, which is not actionable." Id. at 242 n.7.

4

This court subsequently granted (over the plaintiffs' objection) the defendants' motion to submit supplemental briefing on their motion to dismiss, Order of July 5, 2013, and the plaintiffs filed a response to the defendants' supplemental memorandum. After reviewing those materials, this court declines to dismiss the complaint again, for the reasons explained briefly below. This ruling, of course, is without prejudice to the defendants' renewal of their arguments for dismissal--including their argument that the plaintiffs cannot show loss causation--by way of a properly supported motion for summary judgment.

**Actionable misstatements or omissions.** "For a complaint to state a claim for securities fraud under section 10(b) and Rule 10b-5, it must plead," among other things, "a material misrepresentation or omission." ACA Fin. Guar. Corp. v. Advest, Inc., 512 F.3d 46, 58 (1st Cir. 2008). To do so, the complaint must "'specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading.'" Id. (quoting 15 U.S.C. § 78u-4(b)(1) (bracketing by the court)).

The defendants argue that the plaintiffs have failed to meet this standard because they "have not alleged that anyone from CVS Caremark ever said that [it] had no problems with service" or "no problems at all with integration of any of [its] systems following the merger." In response, the plaintiffs identify

several statements to that effect, which the company made to its investors during the time that the plaintiffs held its stock, including, but not limited to:

> • a statement by CVS Caremark's president and CEO, defendant Thomas Ryan, in October 2008 that the company's PBM business "will continue to gain share because . . . [w]e have excellent service";
>
> • a statement by CVS Caremark's executive vice president and CFO, David Rickard, in March 2009 that "we have done the things strategically that needed to be done to make this merger successful";
>
> • statements by Ryan in January 2009 denying that the company had lowered prices for some of its PBM customers "because of a lack of service," or that the company had "an issue with [its computer] systems";
>
> • a statement by Ryan in August 2009 that the company's PBM clients "love our integrated proactive pharmacy care offerings"; and
>
> • a statement in the company's Form 10-K for its 2008 fiscal year that "[w]e believe the breadth of capabilities resulting from the Caremark [m]erger are [*sic*] resonating with our clients and contributed to our success at renewing existing clients."

But the defendants argue that these statements (and others like them) cannot support the plaintiffs' claims, for two reasons.

First, the defendants protest, the plaintiffs have not specified "the reason or reasons why [each] statement is misleading," as required by § 78u-4(b)(1). The plaintiffs have alleged, however, that--contrary to the company's statements that its post-merger capabilities were "resonating with [its] clients" and its denial that any perceived "lack of service" had driven it

6

to lower its PBM prices--CVS Caremark had in fact "unilaterally reduced prices on over 50 percent of its existing PBM contracts in order to retain customers that were dissatisfied with [its] inferior service [and] integration-related issues" during the 2009 selling season. The defendants maintain that this allegation is nevertheless insufficient because the plaintiffs "do not identify a single contract that was re-priced during the 2009 selling season, let alone one that was re-priced due to service," and thus fail to "state with particularity all facts on which [their] belief [in it] is formed," 15 U.S.C. § 78u-4(b)(1).

As the Court of Appeals has cautioned, however, § 78u-4(b) "does not require plaintiffs to plead evidence," only to put "a significant amount of meat . . . on the bones of the complaint." Hill v. Gozani, 638 F.3d 40, 56 (1st Cir. 2011). So, at least at this stage, the plaintiffs' failure to specify which PBM contracts were re-priced on account of the alleged post-merger service problems is not fatal to their claim that, contrary to Ryan's statement in January 2009, CVS Caremark had indeed lowered its prices on half of those contracts for precisely that reason. Furthermore, in vacating this court's prior dismissal order, the Court of Appeals noted that--despite Ryan's assurance "that a worrisome repricing of contracts was unrelated to concerns about CVS Caremark's service"--"[s]everal facets of the November [2009]

7

call revealed that [these] previous statements were misrepresentations."[2]  Mass. Ret. Sys., 716 F.3d at 239.  Based on this observation, if nothing else, this court rules that the plaintiffs have sufficiently alleged the falsity of Ryan's January 2009 statement disassociating the re-pricing from any post-merger service problems, as well as the defendants' more general statements that its clients "love[d]" its post-merger PBM services, which were "resonating" with them.

Second, the defendants maintain that their allegedly false statements were merely "inactionable puffery":  "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1217 (1st Cir. 1996).  But that is an inapt characterization of at least some of the defendants' alleged misstatements--including Ryan's claim that any "lack of service" had played no role in the company's re-pricing of half of its PBM business.  Indeed, while the defendants argue that the plaintiffs

---

[2]The Court of Appeals identified these "facets" of the November 2009 earnings call as Ryan's acknowledgment that CVS Caremark had lost a contract with one of its PBM clients "in part due to 'service issues,'" as well as his announcement of the "sudden retirement" of the then-president of Caremark Pharmacy Services, defendant Howard McLure, who allegedly "built" the CVS Caremark "integrated model."  Mass. Ret. Sys., 716 F.3d at 239.

have failed to allege that this statement was false, as just discussed, they do not argue that this particular statement was "inactionable puffery." Instead, they reserve that charge for some of their other challenged statements (e.g., "[w]e have excellent service," or "we have done the things strategically that needed to be done to make this merger successful").

While the defendants are probably right to call those statements "puffery," the court need not decide that at the moment since, again, there is at least one allegedly false statement which does not fit that description. For the moment, then, this court denies the defendants' motion to dismiss insofar as it is based on the inactionable character of their allegedly false statements, leaving, for a later stage of the case, the task of separating the wheat of those statements from their chaff. See Serabian v. Amoskeag Bank Shares, 24 F.3d 357, 366 (1st Cir. 1994) (ruling that, while not all of the plaintiffs' allegations of securities fraud were actionable, the fact that some were actionable precluded dismissal of the complaint but otherwise left discretion in the district court as to how to winnow the allegations further).

**Scienter.** Under another of the statutory pleading standards applicable to claims under § 10(b) or Rule 10b-5, a complaint must "state with particularity facts giving rise to a strong

9

inference that the defendant acted with the required state of mind" to sustain the claim. 15 U.S.C. § 78u-4(b)(2). In deciding whether a complaint meets this standard,

> a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the smoking-gun genre, or even the most plausible of competing inferences . . . . Yet the inference of scienter must be more than merely reasonable or permissible--it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one would draw from the facts alleged.

Tellab, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007) (quotation marks, citation, and footnote omitted).

"In this circuit, a plaintiff may satisfy the scienter requirement with a showing of either conscious intent to defraud or a high degree of recklessness." ACA Fin. Guar. Corp., 512 F.3d at 58 (quotation marks omitted). In moving to dismiss the complaint, the defendants argue that it fails to support the requisite "cogent and compelling" inference that they acted with this culpable state of mind.

Like the defendants' "puffery" argument, their scienter argument has more to recommend it as to certain of the alleged misstatements than others--in particular, Ryan's statement that post-merger service problems played no role in the company's

10

re-pricing of 50 percent of its PBM contracts. As set forth in the complaint, Ryan made that statement in response to a question from a market analyst during a January 2009 earnings call. Picking up on Ryan's comment that CVS Caremark had "repriced a significant amount of business . . . for all the reasons that you can imagine," the analyst asked, "what are the things that would cause you to reprice? Is there a concern about service for the systems and how can you get people past that . . . ?" Ryan said,

> No . . . let me be clear on that because I think you are making the assumption that we repriced because we had inferior service. We repriced because we decided that these key accounts were accounts that we could impact . . . these are accounts that we kind of wanted to lock down. No trade-offs because of our service . . . . So there was no hidden agenda here about giving a lower price because [of] lack of service if that's what you're asking.

Asked point-blank, then, whether "a concern about service" among the company's PBM customers had caused it to lower its prices, Ryan unequivocally denied that, and proffered an alternative explanation that cast no aspersions on any aspect of the CVS-Caremark integration. If, as the plaintiffs allege, that statement was indeed untrue--and, again, taking a cue from the Court of Appeals, this court rules that the plaintiffs have sufficiently alleged as much--then the statement, by its very nature, supports a "cogent and compelling" inference that Ryan was acting either with the intent to deceive or with a high

11

degree of recklessness as to whether he was doing so. As the Court of Appeals observed, "[f]rom the time the merger was announced, analysts had questioned CVS's ability to integrate with Caremark," Mass. Ret. Sys., 716 F.3d at 240, so Ryan (who was running CVS before the merger, in addition to running CVS Caremark afterwards) had every motive to deny any post-merger service problems. Furthermore, the defendants have not proffered any other reason that Ryan might have done so, and none is apparent to the court. Indeed, the defendants' argument that the plaintiffs have not adequately pled scienter does not address Ryan's denial of service-driven price cuts at all.

Instead, the defendants argue--in some cases, quite persuasively--that the complaint fails to support a strong inference of scienter as to other allegedly false statements (as to the claim of "excellent service," for example, the defendants point to the fact, trumpeted by Ryan during the January 2009 call, that "we just got the JD Power [and] Associates Health Plan PBM of the Year [award] for our service"). While, to plead a securities fraud claim, a plaintiff must "with respect to each act or omission, state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind," 15 U.S.C. § 78u-4(b)(2) (emphasis added), this court sees little utility in performing a statement-by-statement

analysis of the complaint's scienter allegations at this point. As just discussed, the plaintiffs have adequately pled at least one actionable misstatement, and they have adequately pled scienter as to that misstatement. They have also, as the Court of Appeals determined, adequately pled loss causation. Accordingly, the defendants' motion to dismiss[3] is denied, with further narrowing of the plaintiffs' claims to await a later stage of the litigation.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: December 30, 2013

cc: Barry J. Kusinitz, Esq.
    David A. Rosenfeld, Esq.
    Deborah R. Gross, Esq.
    Robert M. Rothman, Esq.
    William R. Grimm, Esq.
    Edmund Polubinski, III, Esq.
    Lawrence Portnoy, Esq.
    Mitchell R. Edwards, Esq.
    Joseph A. Fonti, Esq.

---

[3]Document no. 34.

13