UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

<u>Richard Medoff</u>

     v.                           Civil No. 09-cv-554-JNL
                                         Opinion No. 2016 DNH 029
<u>CVS Caremark Corp., et al.</u>

**MEMORANDUM ORDER**

In this securities class action, shareholders of CVS Caremark Corporation alleged that CVS Caremark and certain of its officers made fraudulent representations and omissions about the integration of the CVS retail pharmacy business with Caremark's prescription benefit manager business.  After several years of litigation and several weeks of negotiation, the parties agreed to settle this matter on August 24, 2015.[1]  They then jointly moved this court for preliminary certification of the class and preliminary approval of the settlement agreement.  The court granted that motion, and by order of November 9, 2015[2]:  (1) preliminarily approved the settlement as set forth in the

---

[1]The background of this action has been set forth in multiple prior orders.  See City of Brockton Ret. Sys. v. CVS Caremark Corp., 2012 DNH 106; Mass. Ret. Sys. v. CVS Caremark Corp., 716 F.3d 229 (1st Cir. 2013); City of Brockton Ret. Sys. v. CVS Caremark Corp., 2013 DNH 178.  Only the facts pertinent to this final approval of the proposed settlement agreement and the request for attorneys' fees and expenses are set forth here.

[2]Document no. 127.

Stipulation of Settlement[3]; (2) preliminarily certified the class for settlement purposes only; (3) preliminarily appointed co-lead plaintiffs as representatives of the class and lead counsel Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP as class counsel; (4) approved, as to form and content, the notice of proposed settlement, proof of claim and release form, and summary notice,[4] and ordered that the notice of proposed settlement be distributed to class members; and (5) scheduled a hearing regarding final approval of the settlement, class counsel's motion for attorneys' fees and expenses.

The co-lead plaintiffs notified the class of the proposed settlement and the scheduled hearing in accordance with the court's order and subsequently moved for final approval of the settlement and the plan of allocation.[5]  They also requested that the court award attorneys' fees and expenses to lead counsel.[6]

On January 19, 2016, the court held a final approval hearing.  For the reasons discussed more fully below, the court now:  (1) grants final certification to the class described _infra_ in Part I, for purposes of settlement only; (2) appoints co-lead

---

[3]Document no. 122.

[4]Document no. 122 Exhibits A-1, A-2, and A-3.

[5]Document no. 129.

[6]Document no. 131.

2

plaintiffs as class representatives and lead counsel as class counsel; (3) finally approves the stipulation of settlement and plan of allocation; (4) finds that notice to the class satisfied due process; and (5) grants lead counsel's request for attorneys' fees in the sum of 30% of the common pool and expenses in the sum of $857,631.86.

## I.   **Class certification**

In its order of November 9, 2015,[7] the court preliminarily certified the following class of plaintiffs in this action:

> All persons and entities who purchased, or otherwise acquired, CVS Caremark common stock between October 30, 2008 and November 4, 2009, inclusive, and were damaged thereby. Excluded from the Class are Defendants; the other officers and directors of CVS Caremark; members of the immediate families of any excluded person; the legal representatives, heirs, successors, or assigns of any excluded person or entity; and any entity controlled by, or in which Defendants have or had a controlling interest. Also excluded from the Class is any Class Member that validly and timely requests exclusion from the Class.

Co-lead plaintiffs now request that the court finalize that certification.

To be certified, a class must satisfy all four requirements of Rule 23(a) and at least one of the criteria outlined in Rule 23(b). Amchem Prods. v. Windsor, 521 U.S. 591, 613-14 (1997). The proponent of the class must affirmatively demonstrate

---

[7]Document no. 127.

compliance with Rule 23.  Makuc v. Am. Honda Motor Co., 835 F.2d 389, 394 (1st Cir. 1987).  Actions such as this, brought "on behalf of shareholders alleging violations of federal securities laws[,] are prime candidates for class action treatment . . . ." Grace v. Perception Tech. Corp., 128 F.R.D. 165, 167 (D. Mass. 1989).

The decision to certify a class is within this court's broad discretion.  See Bowe v. Polymedica Corp., 432 F.3d 1, 4 (1st Cir. 2005).  Though the parties here have agreed to the certification of the class, the court must still assure itself that the class meets the requirements set forth in Federal Rule of Civil Procedure 23.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S.Ct. 2541, 2552 (2011) ("certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied"); see also In re Lupron Mktg. & Sales Practices Litig., 228 F.R.D. 75, 88 (D. Mass. 2005) (in assessing a class for settlement purposes, it is "incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members.") (citing Amchem, 521 U.S. at 620).

**A.   Rule 23(a)**

Before finally certifying the class, the court must satisfy itself that the class meets each of the following requirements, set forth by Rule 23(a) of the Federal Rules of Civil Procedure:

> (1) the class is so numerous that joinder of all members is impracticable;

> (2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

As detailed briefly below, these requirements are easily satisfied in a case such as this, brought by a class of shareholders seeking to recover from a defendant for losses allegedly caused by the same set of alleged misrepresentations or omissions in statements made by the defendant or its officers.

**1.   Numerosity**

To satisfy the numerosity requirement of Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable."  As courts in this circuit have recognized, "joinder is especially impracticable where the class is made up of many shareholders," as it is here.  In re Sonus Networks, Inc. Sec. Litig., 247 F.R.D. 244, 248 (D. Mass. 2007); see also Grace,

128 F.R.D. at 167 ("Even if the number of persons who bought stock during the class period is unknown, numerosity can be assumed where the number of shares traded is so great that common sense dictates the class is very large.").  Here, where 654,345 notice packages have been sent to potential class members, see Supp. Walter Decl. (document no. 144) ¶ 6, the court finds that the numerosity requirement is satisfied.

### 2.   Commonality

The commonality prong of the Rule 23(a) analysis requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  A single common factual or legal issue suffices to satisfy this requirement.  See Van W. v. Midland Nat'l Life Ins. Co., 199 F.R.D. 448, 452 (D.R.I. 2001).  Here, plaintiffs allege that defendants made material misrepresentations and omissions in public communications during the relevant period.  The claims of all plaintiffs arise out of that uniform set of facts and implicate defendants' alleged violation of the Exchange Act thereby.  As such, the commonality requirement is met here.  See, e.g., Kinney v. Metro Global Media, Inc., No. CIV.A. 99-579 ML, 2002 WL 31015604, at *13 (D.R.I. Aug. 22, 2002) (finding commonality where "[a]ll plaintiffs will have to prove the same misrepresentations and

omissions, as well as their materiality and Defendants'
knowledge.").

### 3.  Typicality

Rule 23(a)(3) further requires that "the claims or defenses
of the representative parties are typical of the claims or
defenses of the class."  A class representative's claims "are
'typical' when their claims 'arise from the same event or
practice or course of conduct that gives rise to the claims of
other class members, and . . . are based on the same legal
theory.'"  In re Hannaford Bros. Co. Customer Data Sec. Breach
Litig., 293 F.R.D. 21, 27 (D. Me. 2013) (quoting Garcia-Rubiera
v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009)) (further citation
omitted).  Here, the claims of the co-lead plaintiffs are not
only typical of but identical to the claims of other plaintiffs.
As such, the co-lead plaintiffs' claims would not be "subject to
unique defenses that would divert attention from the common
claims of the class" and the court would not need to "make highly
fact-specific or individualized determinations in order to
establish a defendant's liability to each class member."  In re
Tyco Int'l, Ltd. Multidistrict Litig., No. 03-cv-1352-PB, 2007 WL
1703067, at *2 (D.N.H. June 12, 2007) (quotations omitted).
Thus, the class representatives satisfy the typicality
requirement.

### 4.   Adequacy of representation

To satisfy the adequate representation requirement, "[t]he moving party must show first that the interests of the representative party will not conflict with the interests of any of the class members, and second, that counsel chosen by the representative party is qualified, experienced and able to vigorously conduct the proposed litigation." Andrews v. Bechtel Power Corp., 780 F.2d 124, 130 (1st Cir. 1985).  The court must also assess the capabilities of the proposed lead plaintiffs as well.  See Foley v. Buckley's Great Steaks, Inc., No. 14-CV-063-LM, 2015 WL 1578881, at *3 (D.N.H. Apr. 9, 2015) (finding plaintiff would not adequately represent class because she lacked knowledge about the litigation).

Defendants initially disputed whether the co-lead plaintiffs in this action could adequately represent the class.  See Opp. to Mot. to Certify Class (document no. 103) at 11-18.  Specifically, defendants raised questions about whether co-lead plaintiffs' relationship with the proposed lead counsel created a conflict that would prevent co-lead plaintiffs from representing other class members.  Though that allegation is no longer in play, the court must still satisfy itself that the co-lead plaintiffs do not have interests that would conflict with those of other class

members, and that their chosen counsel are qualified.  See
Amchem, 521 U.S. at 627.  And it is so satisfied.

In their opposition to the certification motion, Defendants
observed that certain lawyers in lead counsel's firms had
contributed to the campaigns of the chairmen of two of the lead
plaintiffs, Norfolk County Retirement System and Plymouth County
Retirement System.  Opp. to Mot. to Certify Class (document no.
103) at 12.  These donations, defendants alleged, may potentially
cause lead counsel to favor co-lead plaintiffs over the other
class members.  However, as the Court of Appeals has observed,
speculative or hypothetical conflicts do not defeat Rule 23's
adequacy requirement.  In re Nexium Antitrust Litig., 777 F.3d 9,
21 (1st Cir. 2015) (citing Gunnells v. Healthplan Servs., Inc.,
348 F.3d 417, 430 (4th Cir. 2003)).  In this case, there is no
indication that the mere spectre of a possible conflict coalesced
into anything more.  Though these donations appear troubling at
first glance, there is no indication that the co-lead plaintiffs
selected class counsel because of those donations -- that is,
there is no evidence that class counsel "paid to play."[8]  See In
re Diamond Foods, Inc., Sec. Litig., 295 F.R.D. 240, 256-57 (N.D.

---

[8]"Pay to play" arrangements may "create[] incentives for
firms to recommend filing suit even if the case is weak, leading
to an increase in frivolous securities fraud claims."  Diamond
Foods, 295 F.R.D. at 255.  But a case, such as this one, that has
survived a motion to dismiss, "cannot be deemed frivolous."  Id.

Cal. 2013).  Thus, the court concludes that the donations do not create a conflict that would prevent the co-lead plaintiffs and lead counsel from adequately representing the class.

For the same reason, the fact that counsel brought the claims asserted here to the co-lead plaintiffs' attention under an agreement to monitor plaintiffs' investment portfolios for potential cases also does not in and of itself create a conflict. As several courts have concluded, the mere existence of a monitoring agreement, absent evidence that counsel were hired because of that agreement, is not dispositive.  See, e.g., Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC, 616 F. Supp. 2d 461, 466 (S.D.N.Y. 2009) (monitoring agreements not disqualifying); In re UTStarcom, Inc. Sec. Litig., No. C 04-04908 JW, 2010 WL 1945737, at *8 (N.D. Cal. May 12, 2010) (same).  As there is no indication that lead counsel in this case were hired to represent the co-lead plaintiffs in this action under the monitoring agreement,[9] the agreement itself creates no conflict.  The court therefore concludes that the co-lead plaintiffs serve as adequate representatives of the class under Rule 23(a)(4).[10]

_____

[9]To the contrary, at the final approval hearing, lead counsel assured the court that co-lead plaintiffs vetted several firms before settling on lead counsel.

[10]Defendants also attacked the co-lead plaintiffs' participation in and knowledge about the litigation as

### B.    Rule 23(b)(3)

In addition to satisfying the requirements of Rule 23(a), plaintiffs must also demonstrate that one of the subsections of Rule 23(b) applies to the proposed class.  The parties here propose that the class satisfies Rule 23(b)(3).  Under this rule, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

Here, as in most securities fraud cases, the questions of law and fact common to the proposed class would predominate over any questions that may affect only individual class members.  See

_____

insufficient, Opp. to Mot. to Certify Class (document no. 103) at 18-19, but withdrew these concerns at the final settlement hearing.  Acknowledging, as has Judge Smith, that "[i]n the context of complex securities litigation, attacks on the adequacy of the class representative based on the representative's ignorance are rarely appropriate," Rosen v. Textron, Inc., 369 F. Supp. 2d 204, 216 (D.R.I. 2005), the court concludes that co-lead plaintiffs adequately supervised the litigation.  In particular, here, the Chairmen of the Norfolk and Brockton retirement systems and the Executive Director of the Plymouth retirement system conferred with counsel on litigation and settlement strategy, assisted with discovery, were deposed, and worked cooperatively with one another with respect to this action.  Connolly Decl. (document no. 133) ¶ 4; Farmer Decl. (document no. 134) ¶ 4.  The Chairman of the Norfolk retirement system further attended the August 2015 mediation that ultimately resulted in this settlement.  Connolly Decl. (document no. 133) ¶ 4.

Amchem, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging . . . securities fraud").  The predominating questions here include (1) whether the defendants violated federal securities laws, (2) whether the defendants' statements during the relevant period were materially false and misleading, (3) whether those statements caused the subsequent drop in the price of defendants' stock and (4) the extent of the class members' injuries and the appropriate measure of damages.[11] The class therefore satisfies the requirements of Rule 23(b)(3).

### C.  Class counsel

By its order of November 9, 2015, the court also preliminarily appointed lead counsel, Robbins Geller Rudman & Dowd LLP and Labaton Sucharow LLP, as class counsel.  Having considered the relevant factors invoked by Rule 23(g), and absent any objection by the defendants or any class member, the court concludes that lead counsel have fairly and adequately

---

[11]In their objection to plaintiffs' motion for class certification, the defendants raised only one impediment to certification under 23(b)(3):  that plaintiffs' damages model did not adequately comport with their theory of liability.  Obj. to Mot. to Certify Class (document no. 103) at 20-25.  It is not clear to the court that this would have impeded certification in light of the Basic presumption as invoked by the Supreme Court in Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct. 2398 (2014).  In any event, that allegation is no longer at issue.

represented the interests of the class and accordingly finalizes that appointment.

## II.  **Final approval of the class action settlement**

Under Rule 23(e), the court may approve a class action settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  "The case law offers 'laundry lists of factors' pertaining to reasonableness, but 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'" Bezdek v. Vibram USA, Inc., Nos. 15-1207, -1208, -1209, slip op. at 8 (1st Cir. Dec. 31, 2015) (quoting Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund, 582 F.3d 30, 44 (1st Cir. 2009)).  The court performs this analysis in the shadow of the "strong public policy in favor of settlements," P.R. Dairy Farmers Ass'n v. Pagan, 748 F.3d 13, 20 (1st Cir. 2014) (internal quotations omitted), particularly in class action litigation, In re Tyco Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 259 (D.N.H. 2007).  And, having performed it, the court concludes that the settlement proposed

13

here is fair, reasonable, and adequate for at least the following reasons.

First and foremost, "[i]f the parties negotiated at arm's length and conducted sufficient discovery, [this court] must presume the settlement is reasonable." In re Pharm. Indus. Average Wholesale Price Litig., 588 F.3d 24, 32-33 (1st Cir. 2009). This presumption is appropriate here. This case has traversed some six years of litigation to reach this juncture, including two motions to dismiss, an appeal to the Court of Appeals, extensive fact discovery,[12] resolution of several discovery disputes, and the beginning of expert reports and discovery.[13] The settlement negotiations themselves took place over the course of several weeks and the settlement itself was finalized only after mediation facilitated by a former federal judge experienced in complex securities cases. See Mem. (document no. 129) at 6-7. Finally, counsel for all parties have zealously represented the interests of their clients. They are

_____

[12]By the time the parties agreed to settle, lead counsel had subpoenaed 60 non-party witnesses, reviewed and analyzed over 1.3 million pages of documents, and taken or defended 15 depositions. See Joint Decl. (document no. 132) ¶ 6.

[13]The parties also fully briefed a motion for class certification, which was denied without prejudice only after the parties informed the court of their settlement agreement. See Order of September 18, 2015.

14

experienced attorneys and knowledgeable about the facts, claims, and defenses raised in this action and the court accordingly affords some weight to their representations that this settlement provides fair, reasonable, and adequate class relief.

Second, continuing this litigation would be complex and expensive.  The parties resolved this action toward the end of fact discovery -- indeed, with a pending motion to compel that, if granted (and the court need take no position on its merits now), may have required a significant do-over of at least some portions of electronic discovery.  Continuing the case would increase the cost of additional fact discovery, summary judgment motions, expert reports and depositions, trial, and likely subsequent appeals.  Settlement at this juncture eliminates those expenses and, perhaps more importantly, the uncertainties inherent in taking this case to trial.

Third, the court concludes that the settlement accounts for the uphill battle that the plaintiffs faced in establishing liability and damages in this action.  In particular, at trial, plaintiffs would bear the burden of proving that the defendants' statements caused the defendants' stock to decline on November 5, 2009, and how much of that decline they caused.  Mass. Ret. Sys., 716 F.3d at 241 n.7.  Defendants have vigorously argued that other disclosures during the defendants' earnings call held that

15

day caused the decline -- such as the disclosure that the defendants would not meet their prior earnings projections.  It would also fall on plaintiffs to prove that the defendants' alleged false statements were made with the appropriate scienter and that the members of the class had suffered compensable losses.  A settlement agreement is reasonable when it accounts for a realistic view of the particular risks and uncertainties involved in the litigation, especially in a securities fraud case where the defendants' defenses to liability and loss causation "could result in no liability and zero recovery for the class." In re StockerYale, Inc. Sec. Litig., No. 05-cv-177-SM, 2007 WL 4589772, at *3 (D.N.H. Dec. 18, 2007).  The court is satisfied that the parties entered this agreement with eyes wide open to the risks inherent in continuing this litigation.

Fourth, the settlement amount is reasonable in light of the class's potential recovery.  The co-lead plaintiffs retained a damages expert, who estimated that a realistic assessment of the maximum amount of recoverable damages was approximately $900 million.[14]  At 5.33% of that projection, the $48 million

---

[14]In calculating the $900 million potential recovery, this expert assumed that co-lead plaintiffs would be able to prove at trial that actionable revelations about the integration at issue here caused 70% of the decline of the price of CVS Caremark stock on November 5, 2009, while the remaining 30% resulted from non-actionable statements, such as the downward revision of CVS Caremark's projected earnings.  Joint Dec'l (doc. no. 132) ¶ 66.

settlement amount is well above the median percentage of
settlement recoveries in comparable securities class action
cases.  See Laarni T. Bulan, Ellen M. Ryan, & Laura E. Simmons,
Securities Class Action Settlements 2014 Review and Analysis, at
8-9 (Cornerstone Research 2014) (median percentage of recovery in
securities class action settlements overall and those with
estimated damages between $500 and $999 million in 2014 was 2.2%
of estimated damages); see also Dr. Rezno Comolli & Svetlana
Starykh, Recent Trends in Securities Class Action Litigation:
2014 Full-Year Review, at 28 (NERA Economic Consulting Jan. 20,
2015) (2014 median settlement amount in class action securities
cases was 6.5 million).  A recovery percentage higher than half
of recoveries in a broadly comparable range appears reasonable to
the court, especially in light of the litigation risks described
supra.  See, e.g., In re Merrill Lynch & Co. Inc. Research
Reports Sec. Litig., No. 02 MDL 1484 (JFK), 2007 WL 313474, at
*10 (S.D.N.Y. Feb. 1, 2007) (approving $40.3 million settlement
representing approximately 6.25% of estimated damages as being at
the "higher end of the range of reasonableness of recovery in
class action securities litigations").

     Fifth, the decision to settle and the decision as to the
amount of settlement were not made in a vacuum.  As discussed
supra, the parties began seriously discussing settlement well

17

into the heart -- if not near to the end of -- fact discovery,
and with the benefit of expert consultation.  The parties further
benefitted from the clarification of claims and defenses in this
action through litigating two motions to dismiss and an appeal.
Accordingly, the court finds that co-lead plaintiffs and their
counsel were sufficiently well-informed to make a calculated
judgment on the risks and benefits of settlement on behalf of the
class.  A well-informed and calculated decision to settle for the
amount in question here weighs in favor of the reasonableness of
the settlement.  See, e.g., StockerYale, 2007 WL 4589772, at *3.

Sixth and finally, the lack of any serious objection to the
settlement agreement from members of the class weighs in favor of
approving the settlement.  See Wal-Mart Stores, Inc. v. Visa
U.S.A. Inc., 396 F.3d 96, 118 (2d Cir. 2005) ("If only a small
number of objections are received, that fact can be viewed as
indicative of the adequacy of the settlement."); In re
Colgate-Palmolive Softsoap Antibacterial Hand Soap Mktg. & Sales
Practices Litig., No. 12-MD-2320-PB, 2015 WL 7282543, at *12
(D.N.H. Nov. 16, 2015) (the "small number of objections itself
counts in favor of approving the proposed settlement").  The
court has received only two objections to the proposed

settlement.[15]   Though the court is sympathetic to both objectors'
frustration at the relatively small recovery afforded individual
investors in securities class actions generally, and in this case
particularly, neither objection compels the court to find the
settlement unreasonable.[16]

Taking into account the totality of the circumstances in
play here; the court's review of the documents submitted and the
parties' arguments at the final settlement approval hearing; and
the court's familiarity with this case, its procedural history,
the parties involved, and the work of their counsel, the court
finds that the proposed settlement is fair, reasonable, and
adequate to the settlement class.   The court further finds that
the settlement was not the product of collusion and lacks any
indicia of unfairness.   Finally, the court finds that the
settlement represents a fair and complete resolution of all

_____

[15]Document nos. 124 & 145.   Though neither objection was
submitted in strict adherence to the procedures set forth in its
November 9, 2015 order, in the interest of fairness, the court
considered both objections.

[16]The first asks the court to reject any settlement that
fails to recover at least 25% of damages calculated by assuming
that defendants' actionable statements caused 100% of the drop in
CVS Caremark's stock price on November 5, 2009.   For the reasons
discussed supra, such a settlement would fail to account for a
realistic view of the risks inherent in proceeding with this
litigation or the potential recoverable damages.   The second
objection, beginning with the salutation, "Dear Idiots," takes
issue with the proceedings in general but levels no specific
challenge against the particulars of the proposed settlement.

claims asserted in a representative capacity on behalf of the settlement class and should fully and finally resolve all such claims.  Accordingly, the court approves the settlement.

## III. **The plan of allocation**

The court has reviewed the proposed plan of allocation,[17] which must, like the settlement itself, be fair, reasonable, and adequate.  See Tyco, 535 F. Supp. 2d at 262.  The plan, developed by lead counsel in consultation with their retained damages expert, contemplates calculating a class member's claim to a portion of the settlement on (1) the difference between the amount of estimated alleged artificial inflation in CVS Caremark's common stock price on the date of purchase or acquisition and the date of sale less the sale price, or (2) the purchase price less the sale price, whichever is smaller.  Such an approach ties each class member's portion of the settlement amount to the number of shares the class member owned and the price of the stock at time of sale.  In the absence of any objection to this apportionment, the court concludes that this approach is grounded in a reasonable and rational basis, and is fair to the members of the class.  Cf. In re Cabletron Sys., Inc. Sec. Litig., 239 F.R.D. 30, 35 (D.N.H. 2006) (approving plan of

---

[17]Document no. 122-2 at 17-19.

allocation accounting for class members' relative damages depending on timing of stock sale).  Accordingly, the plan of allocation is approved.

## IV.  **Notice to the class**

To satisfy the requirements of due process, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1); see Reppert v. Marvin Lumber & Cedar Co., 359 F.3d 53, 56 (1st Cir. 2004).  The notice program need not be perfect, but it must provide the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The forms of notice in this action, which the court approved, contained all of the information required by Rule 23(c)(2)(B) of the Federal Rules of Civil Procedure and by the PSLRA.  See 15 U.S.C. § 78u-4(a)(7).  The notice was issued in accordance with the court's November 9, 2015 order.  Troubled by the allegation of one class member that he received his notice only the day before objections were due, the court directed class counsel to show cause why the scheduled hearing should not be continued to allow class members an extended opportunity to object.  See January 13, 2016 Order.  Based on counsel's

subsequent filing, see document no. 146, and arguments presented
at the settlement hearing, the court is satisfied that the class
was afforded "the best notice . . . practicable under the
circumstances."[18] Fed. R. Civ. P. 23(c)(2)(B); see also Reppert,
359 F.3d at 56 (notice requirements may be satisfied "by methods
of notification other than actual personal notice," such as by
publication); Hill v. State St. Corp., No. CIV.A. 09-12146-GAO,
2015 WL 1734996, at *2 (D. Mass. Apr. 16, 2015) (due process
satisfied even though some class members received notice after
objection deadline).

## V.    **Fees and expenses**

Lead counsel have moved for an award of attorneys' fees in
the amount of 30% of the settlement amount and $857,631.86 in

---

[18]In light of this, and out of an abundance of caution, the
court held the record of the January 19, 2016 hearing open for an
additional 30 days.  See Order of January 20, 2016.  The court
received no additional objections during that period.  Nor did
the parties.  See Submission Concerning Class Reaction (document
no. 152) at 1.
    Though the court and parties were made aware that a clerical
error in the original notice transposed digits in the zip code of
the address to which claimants were instructed to send their
claim forms, see Letter of January 22, 2016 (document no. 151),
the court is satisfied that lead counsel have taken appropriate
remedial measures, see Supp. Mem. (document no. 149) at 2-3, and
that the error does not affect the adequacy of notice to the
class.

expenses.[19]  For the reasons discussed below, those requests are
granted.

### A.   Fees

"[A] litigant or a lawyer who recovers a common fund for the
benefit of persons other than himself or his client is entitled
to a reasonable attorney's fee from the fund as a whole." Boeing
Co. v. Van Gemert, 444 U.S. 472, 478 (1980).  "The common fund
doctrine is founded on the equitable principle that those who
have profited from litigation should share its costs." In re
Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire
Litig., 56 F.3d 295, 305 n.6 (1st Cir. 1995).

"[I]n a common fund case the district court, in the exercise
of its informed discretion, may calculate counsel fees either on
a percentage of the fund basis or by fashioning a lodestar." In
re Thirteen Appeals, 56 F.3d at 307.  A percentage of the fund is
precisely that:  under that method, counsel receive a percentage
of the recovered funds.  Employing the lodestar method, on the
other hand, requires the court to "determin[e] the number of
hours productively spent on the litigation and multiply[] those
hours by reasonable hourly rates." Id. at 305.  The court's
discretion may, "at times, involve using a combination of both

---

[19]Document no. 131.

methods when appropriate." Id.  Courts in this Circuit have done

just that, employing "the percentage of fund . . . method with a

lodestar cross-check to evaluate the fee request." In re Tyco

Int'l, Ltd. Multidistrict Litig., 535 F. Supp. 2d 249, 265

(D.N.H. 2007).  In the end, the court must assure itself that the

award of fees, like the settlement itself, is reasonable. 15

U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded

by the court to counsel for the plaintiff class shall not exceed

a reasonable percentage of the amount of any damages and

prejudgment interest actually paid to the class.").

While the First Circuit Court of Appeals has not established

specific factors to assess a common fund fee request, courts in

this circuit have considered such factors as:

> (1) the size of the fund and the number of persons
> benefitted; (2) the skill, experience, and efficiency
> of the attorneys involved; (3) the complexity and
> duration of the litigation; (4) the risks of the
> litigation; (5) the amount of time devoted to the case
> by counsel; (6) awards in similar cases; and (7) public
> policy considerations, if any.

In re Lupron Mktg. & Sales Practices Litig., No. 01-CV-10861-RGS,

2005 WL 2006833, at *3 (D. Mass. Aug. 17, 2005); see also

Baptista v. Mut. of Omaha Ins. Co., 859 F. Supp. 2d 236, 242

(D.R.I. 2012).  Taking these factors into account and concluding

that each in turn weighs in favor of the award sought by counsel

24

here, the court concludes that the fee requested by co-lead counsel -- 30% of the common fund -- is reasonable.

First, the size of the fund here -- $48 million -- compares favorably to settlements in other securities class actions, for the reasons discussed <u>supra</u>, Part II at 16-17.  Though the number of people benefitted remains uncertain, as proofs of claims are not due until March 23, 2016, some 654,345 potential class members have been put on notice of the proposed settlement.  This results in a sizeable settlement for a class of not insignificant size.

Second, the court finds that the attorneys involved on both sides of this litigation have more than adequately demonstrated their skill and experience through aggressively prosecuting and defending this action.

Third, as described <u>supra</u>, Part II at 13-14, this has been a complex action spanning some six years, an appeal, extensive discovery, and some complex issues of law and fact.

Fourth, for the reasons discussed, again, <u>supra</u>, Part II at 15-16, plaintiffs in this action faced the not insignificant risk of not recovering any damages at all.  Where, as here, lead counsel undertook this action on a contingency basis and faced a significant risk of non-payment, this factor weighs more heavily in favor of rewarding litigation counsel.  <u>See</u>, <u>e.g.</u>, <u>In re</u>

25

Lupron, 2005 WL 2006833, at *4 ("the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate award").

Fifth, counsel's affidavits in support of this motion detail some 32,000 hours spent investigating, prosecuting, and resolving this litigation.  At the rates proposed as reasonable by counsel, this renders a lodestar value of roughly $16.1 million.  By comparison, the fee requested here -- approximately $14.4 million -- comprises only 89% of that lodestar value.  Balancing "the interests of the Class Plaintiffs . . . with those of Class Counsel, who has undoubtedly worked diligently for their clients," the court concludes that 30% of the common fund, a discount from the lodestar value, is reasonable.  Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 350 (D. Mass. 2015) aff'd, No. 15-1207, 2015 WL 9583769 (1st Cir. Dec. 31, 2015) (fee representing 68% of lodestar value was reasonable) (internal quotations omitted).

Sixth, as several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations.  See, e.g., In re Neurontin Mktg. & Sales Practices Litig., No. 04-cv-10981-PBS, 2004 WL 5810625, at *3 (D. Mass. Nov. 10, 2014) (observing that "nearly two-thirds of class action fee awards based on the percentage method were between 25% and

26

35% of the common fund" and granting 28% of fund); In re Relafin Antitrust Litig., 231 F.R.D. 52, 80-82 (D. Mass. 2005) (awarding 33% of $75 million settlement fund); StockerYale, 2007 WL 4589772, at *6 (awarding 33% of $3.4 million settlement).

Seventh, public policy supports rewarding counsel for prosecuting securities class actions, especially where counsel's dogged efforts -- undertaken on a wholly contingent basis -- result in satisfactory resolution for the class. See Tyco, 535 F. Supp. 2d at 270.

Finally, the court does not wish to discount the fact that co-lead plaintiffs consent to the request and, just as significantly, no member of the class has objected to it. Cf. Tyco, 535 F. Supp. 2d at 269 (approving fee request where only a small percentage objected thereto). Taking into account this and the several factors discussed above, the court concludes that the fees requested by counsel in this action are reasonable.

**B.   Expenses**

Counsel are entitled to recover "expenses, reasonable in amount, that were necessary to bring the action to a climax." In re Fidelity/Micron Sec. Litig., 167 F.2d 735, 737 (1st Cir. 1999). Here, co-lead counsel have sought reimbursement in the amount of $857,631.86 for expenses incurred in conjunction with their representation of the class in this action. In exhibits to

their motion seeking fees and expenses, counsel have provided a detailed breakdown of these expenses.[20] In light of the legitimate needs arising from the duration and complexity of this case, and in the absence of any objection thereto, the court finds that the expense request is reasonable. See In Re San Juan Dupont Plaza Hotel Fire Litig., 111 F.3d 220, 233-38 (1st Cir. 1997).

## VI. **Conclusion**

For the foregoing reasons, the court grants co-lead plaintiffs' motion for final approval of the settlement and plan allocation[21] by:

(1) finally certifying the class described infra in Part I, for purposes of settlement only;

(2) appointing co-lead plaintiffs as Class representatives and lead counsel as Class counsel;

(3) finally approving the Stipulation of Settlement and Plan of Allocation;

(4) finding that notice to the Class satisfied due process.

---

[20]See Rothman Decl. (document no. 136) Exs. B through F; Gardner Decl. (document no. 137) Exs. B through G; Kusinitz Decl. (document no. 138) Ex. B; Chapman Decl. (document no. 139) Exs. B and C; Gross Decl. (document no. 140) Exs. B and C.

[21]Document no. 128.

28

The court also grants lead counsel's request for attorneys' fees[22] in the sum of 30% of the common pool and expenses in the sum of $857,631.86.

The clerk shall enter judgment accordingly and close the case.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: February 17, 2016

cc:  Barry J. Kucinitz, Esq.
     David A. Rosenfeld, Esq.
     Deborah R. Gross, Esq.
     Robert M. Rothman, Esq.
     William R. Grimm, Esq.
     David K. Baumgarten, Esq.
     Katherine M. Turner, Esq.
     Leslie C. Mahaffey, Esq.
     Margaret E. Keeley, Esq.
     Matthew H. Blumenstein, Esq.
     Mitchell R. Edwards, Esq.
     Steven M. Farina, Esq.
     Bailie L. Heikkinen, Esq.
     Christine M. Fox, Esq.
     Christopher M. Barrett, Esq.
     Eric W. Boardman, Esq.
     Guillaume Buell, Esq.
     Jonah H. Goldstein, Esq.
     Jonathan Gardner, Esq.
     Nicole Zeiss, Esq.
     Robert J. Robbins, Esq.
     Serena P. Hallowell, Esq.
     Theodore J. Pintar, Esq.

--------

[22]Document no. 130.

29